**STATE of Maine**

v.

**Sean McKENZIE.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 29, 1991.
Decided Feb. 28, 1992.

Michael E. Povich, Dist. Atty., Laura Yustak Smith, Asst. Dist. Atty., Calais, for plaintiff.

Daniel Lacasse, Brown, Tibbetts, Churchill & Lacasse, Calais, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

GLASSMAN, Justice.

Sean McKenzie appeals from the judgments of the Superior Court (Washington County, *Browne, A.R.J.*) affirming the judgments of the District Court (Calais, *Clapp, J.*) entered after a nonjury trial finding him guilty of disorderly conduct, in violation of 17-A M.R.S.A. § 501 (1983 & Supp.1991),[1] and assault, in violation of 17-A M.R.S.A. § 207 (1983 & Supp.1991). We find no merit in McKenzie's contentions that the evidence was insufficient to support the convictions of disorderly conduct and assault and that the State failed to prove that he was not acting in self-defense, and we affirm the judgments.

■ In examining the sufficiency of the evidence, we view that evidence in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offenses charged. *State v. Barry*, 495 A.2d 825, 826 (Me.1985). When, as here, the Superior Court acts as an intermediate appellate court, we examine directly the record of the District Court. *State v. Richford*, 519 A.2d 193, 195 (Me.1986).

■ The evidence presented at trial may be briefly summarized as follows: McKenzie, aged 18 years, arrived at the emergency room of the Calais Regional Hospital at 9:00 p.m. in the company of his younger brother and a friend. He had injured his left knee and required treatment. Dr. Simmons, who was working in the emergency room, detected a strong odor of alcohol on McKenzie's breath. Once in the emergency room, McKenzie used foul and vulgar language, screamed, spit and struck out at hospital personnel and others present at the time. Because of McKenzie's conduct, and over his objection, he was placed in a four point restraint.[2] Simmons then assessed McKenzie physically and found that he had an abrasion of the left knee, but was moving well and that there were no significant neurologic deficits. While McKenzie was restrained, he consented to and cooperated with the withdrawal from his arm of a blood sample for toxicologies. When, without McKenzie's consent to the injection, Simmons approached him with a hypodermic syringe for the purpose of administering a sedative to attempt to calm him and control his continued combative behavior, McKenzie "butted" Simmons's chest with his head. The drug was not administered. Shortly thereafter, McKenzie was discharged to the custody of the police.

■ Disorderly conduct under section 501(2) requires "that the state prove that [McKenzie] acted knowingly to the extent that he was aware that he was accosting, insulting, taunting or challenging a person with offensive, derisive or annoying words or gestures." *State v. John W.*, 418 A.2d 1097, 1103-04 (Me.1980). There is no requirement, however, that the State prove that McKenzie knew his conduct would have a "direct tendency to cause a violent response." *Id.* at 1104. The trial court

1. 17-A M.R.S.A. § 501 provides in pertinent part:

   A person is guilty of disorderly conduct if:
   ....
   **2.** In a public or private place, he knowingly accosts, insults, taunts or challenges any person with offensive, derisive or annoying words, or by gestures or other physical conduct, which would in fact have a direct tendency to cause a violent response by an ordinary person in the situation of the person so accosted, insulted, taunted or challenged.

2. Dr. Simmons testified that a four point restraint is "[p]utting arms and legs in leathers and tying those then to the corners of the bed."

heard evidence that in the emergency room of the Calais Regional Hospital, McKenzie embarked on a course of conduct that included foul and abusive language, spitting and striking out at hospital personnel and others present at the time. There was also evidence that, although intoxicated, McKenzie was aware of his surroundings, had sought medical care for an abrasion to his leg and had consented to and cooperated with the medical personnel in securing a blood sample from his arm.

Section 207 provides that "[a] person is guilty of assault if he intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another." It is well settled law that once the issue of self-defense is generated by the evidence, the burden rests on the State to disprove its existence beyond a reasonable doubt. *See State v. O'Brien*, 434 A.2d 9, 13 (Me.1981); *State v. Lagasse*, 410 A.2d 537, 542 (Me.1980). Contrary to McKenzie's contention that he acted in self-defense in striking Simmons with his head, we hold that on the evidence in this case the issue was not generated. The evidence is clear that throughout his stay in the emergency room McKenzie continuously engaged in combative behavior toward other persons, including the hospital personnel. There is nothing in the evidence to suggest that when McKenzie struck Simmons with his head, as distinguished from the remainder of his behavior, he did so in order to defend himself from the imminent use of unlawful nondeadly force. On the evidence before it the trial court rationally could find beyond a reasonable doubt all of the elements of the offenses with which McKenzie was charged.

The entry is:

Judgments affirmed.

All concurring.