### 1997 ME 41

### STATE of Maine

### v.

### Linda CORBIN.

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 24, 1997.

Decided March 12, 1997.

Stephanie Anderson, District Attorney, Andrew P.T. Bloom, Asst. Dist. Atty., Portland, for State.

David J. Ferrucci, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

[¶ 1] Linda Corbin appeals from the judgment entered in the Superior Court (Cumberland County, *Fritzsche, J.*) on a jury verdict finding her guilty of assault in violation of 17–A M.R.S.A. § 207 (1983 & Supp.1996).[1] We agree with Corbin that the trial court erred by denying her request for an instruction to the jury on self-defense. Accordingly, we vacate the judgment.

---

1. 17–A M.R.S.A. § 207 provides, in pertinent part:

1. A person is guilty of assault if he intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another.

[¶ 2] The record reveals that Corbin was charged in the District Court (Portland) with theft in violation of 17–A M.R.S.A. § 353 (1983) and assault in violation of section 207. The case was transferred to the Superior Court. Following a trial, the jury returned a not guilty verdict as to the theft charge and a guilty verdict on the charge of assault.

[¶ 3] At the time of the trial, the jury heard, *inter alia,* the following evidence: On July 23, 1995, at approximately 6:30 p.m., Mary Larkin, a loss prevention specialist for Filene's, a department store located in the Maine Mall at South Portland, observed Corbin select several items of clothing and leave the store without paying for the items. Larkin followed Corbin outside, identified herself as store security for Filene's and showed Corbin her badge. Corbin turned around and dropped the clothing she had carried from the store. In regard to what transpired after Larkin requested that Corbin come back into the store with her, Larkin testified:

Q. Did you—Did she go back into the store?

A. No, she did not.

Q. What happened?

A. I had to struggle with her at that point on the sidewalk.

Q. Could you please describe what happened during this struggle?

A. During the struggle I asked her to return to the store. She refused. I saw a Mall security person going to his car. I asked him to call South Portland. She became more combative with me and a struggle continued.

I had ahold of her hand and her arm. She was carrying a purse and a bag. At that time she tried to hit me with her purse which she succeeded in doing and hitting my right forearm area. At that point I reached around and grabbed a handful of hair, the back of her head to contain her until assistance arrived.

[¶ 4] As a result of the encounter, Larkin received some contusions to her right bicep and her shirt was ripped. Corbin and her treating physician testified extensively regarding her bipolar disorder and the effect on Corbin of failing to take her prescribed medications for three days preceding the instant event. As to her encounter with Larkin, Corbin testified:

Q. ... The day, July 23rd. Do you recall anything in particular that day?

A. I do remember a great deal of what happened outside. It's almost like when she—and I don't remember, I definitely don't remember her identifying herself or even seeing a badge. What I think I remember she said, "Hold it." I dropped the items I had in my arms and I do know what [sic] I was assaulted. My hair was pulled. There was hair all over my shirt....

I did not know who this woman was when she grabbed me. She was dressed in a pair of jeans and a shirt. She was not uniformed....

Q. There was testimony of your struggling. Was any of your struggle either in the flight or defending yourself?

A. I remember not being able to struggle. Trying to pull away is what I remember. Not knowing who she was because she was not in uniform. And I remember being very, very sick and I remember then, you know, like standing aside because I was so sick....

Q. So some of your struggling could be characterized as self-defense in your own mind?

A. Oh, definitely. I did not know who she was. I do not remember seeing a badge. She said I grabbed her badge. I don't remember that.

[¶ 5] On cross-examination Corbin testified she did not remember hitting Larkin with her purse, but remembered "trying to pull away"; and in response to the inquiry, "But you do remember them hurting you?", she responded, "Yes, I do."

[¶ 6] At the close of the trial, the court granted Corbin's request that the jury be instructed on mental abnormality, *see* 17–A M.R.S.A. § 38 (1983) ("Evidence of an abnormal condition of the mind may raise a reasonable doubt as to the existence of a required culpable state of mind."), but denied her requested instruction on self-defense, pursuant to 17–A M.R.S.A. § 108 (1983 &

**190**

Supp.1996), on the ground that the issue of self-defense had not been generated.

[¶ 7] Section 108 provides, in pertinent part:

> 1. A person is justified in using a reasonable degree of nondeadly force upon another person in order to defend himself ... from what he reasonably believes to be the *imminent use of unlawful, nondeadly force* by such other person, and he may use a degree of such force which he reasonably believes to be necessary for such purpose. However, such force is not justifiable if:
>
> A. With a purpose to cause physical harm to another person, he provoked the use of unlawful, nondeadly force by such other person; ...

The general rules governing defenses and affirmative defenses are set forth in pertinent part in 17–A M.R.S.A. § 101(1) (1983).[2] In interpreting the applicability of this statute, we have stated:

> Pursuant to [section 101(1)], the State must disprove beyond a reasonable doubt any statutory defense "in issue as a result of evidence admitted at the trial which is sufficient to raise a reasonable doubt on the issue." A defense is in issue within the meaning of section 101 if the evidence is "sufficient to make the existence of all the facts constituting the defense a reasonable hypothesis for the factfinder to entertain." *State v. Glidden*, 487 A.2d 642, 644 (Me. 1985). Either the State or the defense may introduce the evidence that generates the State's obligation. *Id.*

*State v. Begin*, 652 A.2d 102, 106 (Me.1995).

■ [¶ 8] When there is sufficient evidence to generate the issue, "an instruction under section 108 must be given, and, where self-defense is an issue essential to the defendant's case, a failure to so instruct amounts to obvious error because the instructions are 'crucial to defendant's receiving a fair trial.'" *State v. Davis*, 528 A.2d 1267, 1270 (Me.1987)

(quoting *State v. Daley*, 440 A.2d 1053, 1055 (Me.1982)). The denial of the criminal act by the defendant does not relieve the State of its burden to negate any defense generated by the evidence. *State v. Knowles*, 495 A.2d 335, 338 (Me.1985). Applying these principles to the evidence in this case, we conclude the trial court erred by denying Corbin's request that the jury be instructed on self-defense.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

---

**2.** 17–A M.R.S.A. § 101(1) provides:

> The State is not required to negate any facts expressly designated as a "defense," or any exception, exclusion or authorization which is set out in the statute defining the crime by proof at trial, unless the existence of the defense, exception, exclusion or authorization is in issue as a result of evidence admitted at the trial which is sufficient to raise a reasonable doubt on the issue, in which case the State must disprove its existence beyond a reasonable doubt.