1997 ME 71

**STATE of Maine**

v.

**John SULLIVAN**

Supreme Judicial Court of Maine.

Argued March 5, 1997.
Decided April 7, 1997.

Andrew Ketterer, Attorney General, William Baghdoyan, Asst. Atty. Gen. (orally), Charles K. Leadbetter, Asst. Atty. Gen., Augusta, for State.

Wayne S. Moss (orally), Augusta, John Alsop, Alsop & Molnar, Norridgewock, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

[¶ 1] John Sullivan appeals from the judgments entered in the Superior Court (Somerset County, *Marsano, J.*) following a jury verdict finding him guilty on three counts of aggravated assault, 17–A M.R.S.A. § 208 (1983), and one count of reckless conduct with the use of a dangerous weapon, 17–A M.R.S.A. § 211 (1983). Sullivan contends that the trial court erred in failing to instruct the jury on self-defense pursuant to 17–A M.R.S.A. §§ 101(3) & 108 (1983 & Supp. 1996).[1] We agree and vacate the judgments.

I

[¶ 2] Based on the evidence offered at the trial, the jury could have found the following facts: On October 9, 1993, John and Eileen Sullivan went to the Red Garter, a bottle and dance club in St. Albans, to confront Shirley Brooks, the owner of the Red Garter, regarding an incident that had occurred there the previous week.[2] When the Sullivans walked into the Red Garter on the evening of October 9, Brooks recognized Eileen Sullivan and immediately pushed her backwards toward the door. John Sullivan interceded stating, "Look, that's what I'm here to talk to you about, I want to talk to you about this." Brooks then shoved Sullivan back through the entryway and Sullivan tripped, landing on his back. Sullivan started to get up and saw "a whole bunch of people" coming toward him from the dance hall. It is undisputed that Sullivan then pulled out a gun and fired into the crowd, injuring three people.[3] Sullivan was subsequently indicted on two counts of attempted murder, 17–A M.R.S.A. § 152 (1983), three counts of aggravated assault, 17–A M.R.S.A. § 208 (1983), and one count of reckless conduct with the use of a dangerous weapon, 17–A M.R.S.A. § 211 (1983).

II

[¶ 3] At trial Sullivan testified that he felt scared, nervous, emotionally upset and terrified at the time of the shooting because "it was a large group of people. They were acting very hostile. I didn't understand it, but yet I recognized it as being a bad situation real quick." Sullivan further testified that he "didn't think about" whether he could have escaped from the situation because his wife was still somewhere in the crowd of people and he was worried about her safety.

[¶ 4] Sullivan is a decorated Vietnam War veteran who suffers from post-traumatic stress disorder ("PTSD").[4] His psychiatrist, Dr. Linda Peterson, testified that at the time of the shooting, Sullivan felt that his life and his wife's life were in danger. She asserted that at the time of the shooting Sullivan

---

1. Sullivan refers in his brief to an "imperfect self-defense" jury instruction. In *State v. Davis*, 528 A.2d 1267, 1269 n. 2 (Me.1987) (citing W. LaFave and A. Scott, *Handbook on Criminal Law* § 53 at 397, § 77 at 583–84 (1972)), we noted that the commonly accepted usage of the term "imperfect self-defense" varies substantially from the defense pursuant to section 101(3).

2. On October 2 Eileen and two neighbors, George Roundy and Bonnie Roundy, went to the Red Garter. George and another patron, Forrest Davis, engaged in some verbal confrontations during the evening and eventually fought just outside the front door. Eileen attempted to help George, but Davis pushed her away and she fell into the mud. Bonnie asked Shirley Brooks to call for police assistance, but he refused, stating that the two were "getting what they deserved." Just before Eileen finally left, Brooks told her not to return and that she was "banned" from the Red Garter.

3. Before leaving his home on the evening of October 9, Sullivan armed himself with a loaded .357 magnum revolver. Sullivan had a concealed weapon permit at that time and carried the gun in a holster under his jacket.

4. Sullivan has been receiving 100 percent disability pay from the Veterans Administration since 1991, in part due to his PTSD.

was experiencing the same kind of experience that he had in combat, of being endangered, and responded the way he would have in combat.... I don't believe that there is a thought process. It becomes—it becomes an act that is highly trained and you respond—if you had to think in combat, you'd be dead, you don't go, oh, is this kind of person going to kill me, you just react, you do what you're trained to do, what you're overtrained to do.... [I]f you are trained to respond to what you perceive as [a] life threatening situation by immediately responding to protect yourself, the best way you know how, then that's what you do.

Dr. Peterson also testified that "once somebody grabbed [Sullivan] or touched him and there were people around and it felt crowded and threatening, he was more likely to respond with deadly force than somebody who does not have PTSD."

[¶ 5] Sullivan requested jury instructions on self-defense pursuant to 17–A M.R.S.A. §§ 101(3) and 108. The court declined to provide the requested instructions, and the jury returned verdicts of not guilty on the two counts of attempted murder and verdicts of guilty on the three counts of aggravated assault and one count of reckless conduct with the use of a dangerous weapon. Sullivan contends on appeal that the trial court's failure to give the requested self-defense instructions constitutes reversible error. He properly preserved this issue for review. An error properly preserved for review will result in a judgment being vacated unless the error is "harmless." An error is harmless if it is highly probable that the error did not affect the judgment. *State v. Pelletier*, 673 A.2d 1327, 1330 (Me.1996); *see also* M.R.Crim.P. 52(a). Because we conclude that the court erred by failing to pro-

vide jury instructions pursuant to sections 101(3) and 108 and further conclude that the error was not harmless, we vacate the judgments and remand for a new trial.

### III

[¶ 6] Pursuant to 17–A M.R.S.A. § 101(1) (1983), the State must disprove beyond a reasonable doubt any statutory defense "in issue as a result of evidence admitted at the trial which is sufficient to raise a reasonable doubt on the issue." A defense is "in issue" within the meaning of section 101 if the evidence is "sufficient to make the existence of all the facts constituting the defense a reasonable hypothesis for the factfinder to entertain." Either the State or the defense may introduce the evidence that generates the State's obligation.

*State v. Case*, 672 A.2d 586, 589 (Me.1996) (quoting *State v. Begin*, 652 A.2d 102, 106 (Me.1995)). Thus, a defendant is entitled to an instruction on self-defense pursuant to section 108 when the evidence is sufficient to raise the issue.[5] *State v. Winchenbach*, 658 A.2d 1083, 1085 (Me.1995); *State v. Davis*, 528 A.2d 1267, 1270 (Me.1987). The court must view the evidence in the light most favorable to the defendant. *State v. O'Brien*, 434 A.2d 9, 13 (Me.1981). Further, "where self-defense is an issue essential to the defendant's case," the court's failure to instruct on self-defense pursuant to section 108 deprives the defendant of a fair trial and amounts to obvious error. *Davis*, 528 A.2d at 1270.

[¶ 7] A person is justified in using deadly force on another when the person reasonably believes it necessary and reasonably believes that another person is about to use unlawful, deadly force against the person or a third person.[6] 17–A M.R.S.A. § 108(2)(A)(1)

---

**5.** 17–A M.R.S.A. § 108 (1983 & Supp.1996) provides in pertinent part:

**2.** A person is justified in using deadly force upon another person:
   **A.** When the person reasonably believes it necessary and reasonably believes such other person is:
      **(1)** About to use unlawful, deadly force against the person or a 3rd person;
      ...

**C.** However, a person is not justified in using deadly force as provided in paragraph A, if:
   **(1)** With the intent to cause physical harm to another, he provokes such other person to use unlawful deadly force against anyone; or
   ...
   **(3)** He knows that he or a 3rd person can, with complete safety
   (a) retreat from the encounter....

**6.** 17–A M.R.S.A. § 2(8) (1983) provides:

(Supp.1996); *Winchenbach*, 658 A.2d at 1085. From the evidence presented at trial, the jury could have concluded that Sullivan actually believed that unlawful deadly force was about to be exerted against him. Sullivan testified that Shirley Brooks pushed him to the ground and that while he was lying on his back he saw what he perceived to be a large crowd of hostile people rushing toward him. He stated that he was terrified and knew that his "shit was in the wind." Dr. Peterson later declared that Sullivan believed that his life and his wife's life were in danger. Although Sullivan's testimony could be interpreted in many ways, when combined with Dr. Peterson's testimony, a jury rationally could find as fact that Sullivan actually believed, at the very least, that he was about to be subjected to serious bodily injury. Furthermore, given Sullivan's testimony that he perceived that a "large group" of people was rushing toward him, the jury also could have concluded that Sullivan actually believed that he could defend himself only with the use of deadly force. *See, e.g., Commonwealth v. Burbank*, 388 Mass. 789, 448 N.E.2d 735, 739 (1983) (defendant shot unarmed assailant outside bar; viewed in light most favorable to defendant, evidence obligated the court to instruct on self-defense as to assault charges). Viewed in the light most favorable to Sullivan, the evidence presented generated the issue of self-defense and warranted a jury instruction pursuant to section 108.

■ [¶ 8] Undoubtedly, the evidence in this case is such that a jury could also conclude that Sullivan's honestly held beliefs regarding the use of and need for deadly force were objectively unreasonable. Such a possibility, however, is not fatal to Sullivan's claim of self-defense. Section 101(3) of Title 17–A of the Maine Revised Statutes provides in pertinent part:

> If a defense provided under this chapter is precluded solely because the requirement that the actor's belief be reasonable has not been met, he may be convicted only of a crime for which recklessness or criminal negligence suffices, depending on whether his holding the belief was reckless or criminally negligent.

If the State fails to prove beyond a reasonable doubt that the defendant's honestly held but objectively unreasonable belief as to either the imminent use of or the need for unlawful force is recklessly held,[7] the defendant's conduct will be justified under sections 108 and 101(3) for any crimes for which criminal negligence is not an element of the offense. *Davis*, 528 A.2d at 1269–70; *State v. Smith*, 472 A.2d 948, 951 (Me.1984). Thus, a defendant is entitled to a jury instruction pursuant to 17–A M.R.S.A. § 101(3) when, as here, the issue of self-defense is generated by the evidence and the crime charged is one where a reckless state of mind is sufficient for the charged crime. *Davis*, 528 A.2d at 1270.

■ [¶ 9] Sullivan was charged with aggravated assault and reckless conduct with the use of a dangerous weapon; for both, recklessness suffices as the culpable state of mind. 17–A M.R.S.A. §§ 208, 211.[8] Since

---

"Deadly force" means physical force which a person uses with the intent of causing, or which he knows to create a substantial risk of causing, death or serious bodily injury. Intentionally or recklessly discharging a firearm in the direction of another person or at a moving vehicle constitutes deadly force.

" 'Serious bodily injury' means a bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or loss of substantial impairment of the function of any bodily member or organ, or extended convalescence necessary for recovery of physical health." § 2(23).

7. Used in this context, a recklessly held belief must involve "a gross deviation from what the reasonable and prudent person would believe." *State v. Smith*, 472 A.2d 948, 951 (Me.1984) (citing 17–A M.R.S.A. § 35(3)(C) (1983)).

8. A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:

A. Serious bodily injury to another; or
B. Bodily injury to another with use of a dangerous weapon; or
C. Bodily injury to another under circumstances manifesting extreme indifference to the value of human life. Such circumstances include, but are not limited to, the number, location or nature of the injuries, the manner or method inflicted, or the observable physical condition of the victim.

17–A M.R.S.A. § 208(1) (1983).

"A person is guilty of reckless conduct if he recklessly creates a substantial risk of serious bodily injury to another person." § 211.

the evidence generated the issue of self-defense and Sullivan was charged with crimes where a reckless state of mind is sufficient, the State had the burden of proving beyond a reasonable doubt that at least one of Sullivan's beliefs was recklessly held. Accordingly, Sullivan was entitled to a jury instruction pursuant to 101(3).

[¶ 10] The State contends that the evidence does not generate the issue of self-defense because Sullivan was the initial aggressor in the Red Garter incident and because he could have retreated with complete safety. We disagree. A person is not justified in using deadly force if the person has provoked the use of deadly force by the other party or if the person knows that he or a third person could have retreated in complete safety. 17–A M.R.S.A. § 108(2)(C)(1) & (3)(a). Viewing the evidence in the light most favorable to Sullivan, we conclude that a jury rationally could entertain a reasonable doubt on the issues of whether Sullivan was the initial aggressor and whether he knew that he and his wife could have safely retreated from the encounter.

[¶ 11] Sullivan testified that he went to the Red Garter on October 9 "[t]o talk to the owner about what had happened [the previous week] and get the other side of what happened...." Once inside, according to Sullivan, his wife identified Shirley Brooks as the owner of the Red Garter. Brooks then shoved Sullivan's wife. Sullivan stated that while his wife pushed Brooks's hands away, Sullivan said to Brooks, "Look, that's what I'm here to talk to you about, I want to talk to you about this." Sullivan testified that Brooks then shoved Sullivan through the entryway and to the ground. When Sullivan started to get up, he saw "a whole bunch of people" coming toward him. Given this testimony, a jury rationally could entertain a reasonable doubt as to whether Sullivan was the initial aggressor in the shooting incident.

[¶ 12] Similarly, a jury rationally could entertain a reasonable doubt as to whether Sullivan actually knew that he or his wife could retreat in complete safety. According to Sullivan, after Brooks shoved him through the entryway, he was on his back, attempting to get up, and a large group of "very hostile" people were coming toward him. At that moment, he did not know if anyone was behind and "didn't think about" whether he could retreat because he did not know where his wife was and thought that she was in "great danger" from the crowd. Even if Sullivan knew that he could safely retreat from the encounter, he is not precluded from claiming self-defense if he did *not* know that his wife could safely retreat. 17–A M.R.S.A. § 108(2)(C)(3)(a). From Sullivan's testimony on this issue, a jury rationally could entertain reasonable doubts as to whether Sullivan actually knew that he could have retreated in safety and whether he knew that his wife could have retreated from the scene in complete safety. Because the evidence adduced at trial is susceptible to more than one interpretation, it was for the jury to decide whether Sullivan was the initial aggressor and whether he knew that he and his wife could have retreated from the encounter in complete safety.

[¶ 13] The evidence generated the issue of self-defense and the court's failure to instruct the jury pursuant to sections 108 and 101(3) deprived Sullivan of a fair trial.

The entry is:

Judgments vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

