2002 ME 49

**STATE of Maine**

v.

**Barry BARD.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 28, 2002.

Decided: March 28, 2002.

R. Christopher Almy, District Attorney, C. Daniel Wood, Asst. Dist. Atty., Bangor, for State.

William R. Savage, Esq., Portland, for defendant.

Panel: SAUFLEY, C.J., RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Barry Bard appeals from judgments entered in the Superior Court (Penobscot County, *Mead, J.*) following a jury trial finding him guilty of assault (Class C),[1] 17–A M.R.S.A. § 207(1) (1983), criminal threatening (Class C), 17–A M.R.S.A

---

**1.** Usually assault is a Class D crime, but section 1252(4–A) provides:

> If the State pleads and proves that, at the time any crime, excluding murder, under chapter 9, 11, 13 or 27 was committed, the defendant had been convicted of 2 or more crimes violating chapter 9, 11, 13, or 27 or essentially similar crimes in other jurisdictions, the sentencing class for the crime is one class higher than it would otherwise be. . . .

17–A M.R.S.A. § 1252(4–A) (Supp.2001).

§ 209(1) (1983), and violation of a condition of release (Class E), 15 M.R.S.A. § 1092 (Supp.2001). Because we agree that the evidence generated a self-defense instruction, which the court did not give, we vacate the assault conviction.

## I.  BACKGROUND

[¶ 2] Bard and Shirley Garland were romantically involved; in April of 2000 he met her at a bar in Bangor and they returned to Garland's apartment in Old Town. The versions of the ensuing events conflict.

[¶ 3] Garland testified that: upon entering the living room in her apartment Bard hit her and split open her eye, he hit and kicked her repeatedly, threatened to kill her, tried to drag her down the stairs to "throw" her in the Penobscot River, kept attacking her when she struggled back to the apartment, ripped the phone out of the wall, made her take a shower, then raped her.

[¶ 4] Bard testified that on the car ride back to Garland's apartment Garland was drunk and became increasingly incensed after learning of Bard's recent infidelity. At the apartment Garland fell on the stairs splitting open her eye, proceeded to ingest pills, and when Bard called her a "junkie," she cried until he encouraged her to take a shower to wash the blood from the cut on her face. When Bard tried to flush the rest of the pills down the toilet, Garland came at him; Bard accidentally kicked the phone jack, she grabbed his throat, and "we were on the bed struggling over this bag of pills. And we're bouncing all over the bed. And she gets ahold of this knuckle right here and she bites so hard that blood squirts out ... she won't let go ... finally I just put my hand right on her face and ripped my hand out." The bite left a scar.

[¶ 5] Bard was indicted on one count of aggravated assault, two counts of gross sexual assault, one count of criminal threatening with a dangerous weapon, one count of assault, one count of criminal threatening, and one count of violation of a condition of release. The indictment did not identify the specific events that induced each charge. During the trial, after the State rested the court granted Bard's motion for a judgment of acquittal on the aggravated assault charge.

[¶ 6] Bard testified and the following exchange occurred toward the end ·of his testimony:

Q  Now, you know that Shirley's claiming that you were punching her in the face and kicking her and beating her up for hours, you know she's making that claim?

A Yes, I heard that.  That's a lie.

Q  You never did that?

A  No, I just defended myself, pushed her away, tried to shrug her off my back, pulled her hands off my hair.  I pulled my hand out of her mouth.  I pulled on her lips trying to get her lips—her mouth apart and to get my finger out of her mouth.  We wrestled and tussled over pills.

During a sidebar, the court asked if the defense had any "additions or corrections" to the court's jury instructions, and defense counsel responded, "I thought we may have generated a basis for the instruction on self-defense based on the defense testimony in terms of his struggle with the finger and pushing on her face and whatnot." The court declined to give a self-defense instruction.

[¶ 7] The jury found Bard guilty of criminal threatening, assault and violation of a condition of release, but not guilty of the two counts of gross sexual assault and criminal threatening with a dangerous weapon.  The court (Penobscot County,

*Mead, J.*) sentenced Bard to concurrent sentences of four years and nine months on the assault and criminal threatening counts.[2] An appeal to this Court followed; the transcript does not contain the opening or closing statements of the parties.

## II. DISCUSSION

[¶ 8] Bard contends that there was sufficient evidence to generate a self-defense instruction and that such a failure "can never be harmless." Bard argues that because the indictment used "broad language ... self-defense generated as to any one of those possible allegations must result in a self-defense instruction as to each count."

[¶ 9] The State "assumes *arguendo* that the court erred," but asserts that the error was harmless. The State contends that the evidence surrounding the "most significant injury"—when Garland's eye split open upon arriving at her apartment—did not generate a self-defense instruction and that "by Defendant's own account the cut happened well before the biting which required him to respond in self-defense." The State further contends that the criminal threatening conviction should stand if this Court vacates the assault conviction, because there was no need to instruct on self-defense for that charge.

[¶ 10] When a defendant preserves an objection to a court's denial of his requested instruction on self-defense, we have stated that the decision is reviewed for harmless error. *State v. Sullivan*, 1997 ME 71, ¶ 5, 695 A.2d 115, 117. Once the evidence is sufficient to raise the issue of self-defense, "a defendant is entitled to an instruction." *Id.* at ¶ 6. The State asks this Court to engage in a comparative analysis of the evidence to show that the lack of an instruction did not affect the verdict, i.e., a harmless error analysis.

[¶ 11] However, our precedents demonstrate that typically "where self-defense is an issue essential to the defendant's case, the court's failure to instruct on self-defense pursuant to section 108 deprives the defendant of a fair trial and amounts to obvious error." *Id.* (quoting *State v. Davis*, 528 A.2d 1267, 1270 (Me. 1987)) (internal quotation marks omitted). Rather than engaging in a standard harmless error analysis, we analyze the evidence to determine whether the instruction was generated in the first place. *See State v. Winchenbach*, 658 A.2d 1083, 1085 (Me.1995); *Sullivan*, 1997 ME 71, ¶ 7, 695 A.2d at 118. In our analysis we "must view the evidence in the light most favorable to the defendant." *State v. Glassman*, 2001 ME 91, ¶ 12, 772 A.2d 863, 867. We have held that the failure to give an instruction when the evidence generated one is obvious error. *See State v. Corbin*, 1997 ME 41, ¶ 8, 691 A.2d 188, 190.[3] In *Winchenbach*, 658 A.2d at 1084, the alleged victim and the defendant had an extended fight; he pulled the phone cord apart,

> [s]he was backed against the kitchen counter, and he slapped and choked her. She bit him [and chased him out to the car] ... [d]efendant grabbed an aluminum baseball bat outside the trailer. The victim pleaded with him not to smash her car, and tried to hold him back. Defendant swore at her, and hit and broke her car window. She

---

2. Bard received thirty days for the violation of a condition of release to be served concurrently.

3. In *Corbin*, the trial judge denied the defendant's request for a self-defense jury instruction. *Corbin*, 1997 ME 41, ¶ 6, 691 A.2d at 189.

grabbed his arm. He turned around and 'went to hit her with the baseball bat.' The bat struck her hands which were in front of her face, and she fell down.

The jury found the defendant guilty of, *inter alia*, aggravated assault. *Id.* at 1084. We held that there was no error in refusing to instruct the jury on self-defense because "[t]here is no evidence that the victim was about to use unlawful force on defendant when he hit her with the bat. Any force used by the victim in attempting to keep defendant from hitting her car was justified to prevent criminal mischief." *Id.* at 1085; *see also State v. McKenzie*, 605 A.2d 72, 74 (Me.1992) ("The evidence is clear that throughout his stay in the emergency room [the defendant] continuously engaged in combative conduct ... [t]here is *nothing* in the evidence to suggest [he acted in self-defense]," thus the evidence did not generate an instruction) (emphasis added); *compare with Glassman*, 2001 ME 91, ¶ 13, 772 A.2d at 867 (holding that the evidence was sufficient to generate an instruction of self-defense for criminal threatening with a dangerous weapon, when the defendant testified that the gun came loose when [the victim] pushed him, and he was attempting to secure it when [the victim] lunged at him. He then pulled the gun out and pointed it at [the victim]).

■ [¶ 12] The State treats the initial injury to Garland's eye as the basis of the assault charge and contends that because there was no evidence around that incident that illustrated Bard was defending himself, the court did not err in refusing to give the instruction. Bard argues that as long as there is some evidence of self-defense about some conduct that *could* also be the basis of the assault charge, i.e., when he pushed Garland's face after she bit his finger, then the court must instruct on self-defense.

■ [¶ 13] Because the jury acquitted Bard of numerous counts (indicating that it did not believe everything Garland recounted) and there is no way to assess which specific instances of alleged conduct the jury based its verdicts on, we agree with Bard. When the charges stem from several moments of potentially criminal conduct, and the indictment does not identify the particular facts that induced the charges,[4] a court should not refuse to instruct on self-defense when evidence of self-defense surrounding one of the events has been presented.

[¶ 14] In *Winchenbach*, 658 A.2d at 1084, we were presented with a factual scenario of extended fighting and the culminating moment of injury when the defendant swung a baseball bat and hit the victim. Although the victim testified that the defendant had "slapped and choked her" earlier, we analyzed the evidence to see whether a self-defense instruction was generated by looking at the events surrounding the baseball bat injury. *See id.* at 1085. We recognized:

4. The indictment does not necessarily have to identify specific facts. In *State v. Sprague*, 583 A.2d 203, 204 (Me.1990), the defendants contended that the criminal complaints were defective because they should have "contained facts 'particular to this case' rather than 'mere recitation of the statute.'" We held that a complaint is sufficient if it

> contains such plain, concise, and definite allegations of the essential facts constituting the offense as shall adequately apprise a defendant of reasonable and normal intelligence of the act charged, enabling him to defend himself, and, upon conviction or acquittal, to make use of the judgment as the basis for a plea of former jeopardy, should the occasion arise.

*Id.* (quoting *State v. Carter*, 444 A.2d 37, 39 (Me.1982)). "Where a complaint meets this test, it does not become insufficient merely because it charges in the words of the statute." *Id.*

Defendant attempts to portray the victim as twice provoking him into arguments, first, when she pulled a telephone cord out of the wall inside the trailer, and second, when she walked up to him when he was allegedly breaking her car window. Regardless of who was the first aggressor inside the trailer, there is simply no evidence that the victim provoked defendant into hitting her with the bat in order to defend himself. Defendant's argument on appeal that if the victim 'was hurt, it was during the defendant's attempt to wrest the bat from her and get rid of it' had no support in the record. The victim testified that defendant hit her with the bat, and when she picked up the bat and went to swing it at him, he grabbed it and threw it over the trailer. There was no other testimony *on this point*. The Superior Court did not err in declining to instruct on self defense.

*Id.* (emphasis added). While we pinpointed the criminal conduct underlying the aggravated assault charge to decide that there was no evidence of self-defense surrounding the event to warrant a self-defense instruction, we are unable to do the same in the present case.

[¶ 15] In *Winchenbach,* 658 A.2d at 1084, the defendant was charged with aggravated assault, criminal threatening with a dangerous weapon, and two counts of criminal mischief. Between "slapping and choking," or swinging a baseball bat at someone, it is apparent that swinging the baseball bat qualified as the aggravated assault. Here, the assault charge, (which requires intentionally, knowingly, or recklessly causing bodily injury or offensive physical contact), could be illustrated equally by Bard hitting Garland upon arrival at the apartment, *or* by Bard forcibly pushing her face away. Because there were several incidents that could be the basis of the assault charge, and the evidence surrounding one of them describes Garland biting Bard's finger so that he pushed her face away in self-defense, the court should have instructed on self-defense.

[¶ 16] Whether the State meets its burden to disprove the defense of self-defense, *see* 17–A M.R.S.A. § 101(1) (Supp.2001), is for the jury to decide—it is within the jury's purview to weigh the evidence presented and either accept or reject the defense. The jury should have had the means and the authority to do that with a self-defense instruction.

[¶ 17] Finally, we disagree with Bard's contention that the criminal threatening and violation of a condition of release convictions should be vacated. Bard requested a self-defense instruction based on the "struggle with the finger," *specifically* seeking the instruction to justify his physical reaction to Garland's bite.

The entry is:

Judgment on the assault charge vacated. Judgment on the criminal threatening and on the violation of a condition of release charges affirmed, but remanded to the Superior Court for resentencing.