STATE OF MAINE

KNOX, ss.

STATE OF MAINE

v.

DAVID MURPHY,

Defendant

STATE OF MAINE
Knox. S.S., Clerks Office
SUPERIOR COURT

OCT 6 2000

RECEIVED AND FILED
Susan Guillette, Clerk

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-00-128

JRA-RNO - 10/6/2000

DECISION AND ORDER

DONALD L. GARBRECHT
LAW LIBRARY

OCT 13 2000

This matter is before the court on the defendant's motion to suppress. At the hearing on the motion, the court denied so much of the motion which challenged the lawfulness of the automobile stop at issue and the existence of probable cause to arrest the defendant for O.U.I. and request that he submit to field sobriety tests and an intoxilyzer test. What remains is the defendant's effort to suppress statements he made to a Rockland police officer after his vehicle was stopped.

The court finds the facts concerning this aspect of the motion as follows:

The defendant was stopped by Officer Christopher Young of the Rockland Police Department who had observed the defendant engage in several minor driving irregularities as he operated his vehicle for a short distance on Payne Avenue and Park Street in that city; he also observed that the defendant's rear plate light was out as this was in the evening. Payne Avenue and Park Street constitute Route One in Rockland and is in the "built-up" section of the city.

In response to Officer Young's blue lights, the defendant pulled his vehicle into the parking lot of a Dairy Queen. Once the vehicles came to rest, Officer Young approached the defendant as he sat in his vehicle and asked him for his license,

registration and insurance card which were produced without difficulty. Officer Young then explained to the defendant the reasons why he had pulled him over. During these interactions, Officer Young observed that the defendant had bloodshot and glassy eyes, had slow speech, and noticed the odor of alcohol coming from the vehicle. Upon making these observations, Officer Young asked the defendant if he had had anything to drink. After the defendant responded that he had had two beers earlier in Brunswick, the officer next asked him to place himself on a scale of 1-10 as to his impairment, prompting a response of "2." No *Miranda* warnings were provided in advance of these questions. Thereafter, the defendant complied with the officer's request to perform field sobriety tests. Once done, the defendant was arrested at about 10:25 p.m.

During this transaction at the Dairy Queen parking lot, another police cruiser arrived with another officer, Dan Finnegan, as "back-up" to Officer Young. The evidence is unclear, however, when Officer Finnegan arrived and whether or not he was present during the brief questioning of the defendant before the field sobriety tests were administered. In any case, the evidence would show that he did not interact with the defendant at the scene of the stop.

The defendant argues that this factual scenario amounts to custodial interrogation so that his answers to Officer Young's two questions ought to be suppressed because the *Miranda* warnings were not provided to him. Relevant case law, however, does not support the defendant's argument. In the case of *Pennsylvania v. Bruder*, 488 U.S. 9 (1988), the Supreme Court reaffirmed its earlier

2

decision in *Berkemer v. McCarty*, 468 U.S. 420 (1984) "that ordinary traffic stops do not involve custody for purposes of Miranda . . . ." 468 U.S. at 440. This is because such traffic stops are brief, unlike a prolonged station house interrogation, occur in the "public view" in a less police-dominated atmosphere, with the detained motorist's freedom of action not being curtailed to "a degree associated with formal arrest." *Id.* at 438-440. (*quoting California v. Beheler*, 463 U.S. 1121, 1125 (1983)). With the exception of the limited role of Officer Finnegan, the case at bar is nearly identical to the facts in *Bruder*. Officer Young asked the defendant just two questions in a public place over a short period of time. The defendant was not placed in a patrol car nor was he detained for any length of time until he was arrested, which event occurred after he was questioned.

Officer Finnegan's arrival at the scene of this stop does not change the analysis that *Bruder* controls the disposition of this motion. As noted, he had no interaction with the defendant and served the sole function of providing "back-up" and securing the defendant's automobile after he was arrested. This limited role, in this court's view, does not cross the line into the type of coercive circumstances about which courts must be vigilant. *Bruder*, 488 U.S. at 11, n.1.

That the defendant may have felt he was in custody by virtue of his own history of arrests for O.U.I. and the arrival of Officer Finnegan in another patrol car is not determinative. In the case of *State v. Michaud*, 1998 ME 251, ¶ 4, 724 A.2d 1222, 1226, the Law Court provided a nonexclusive list of ten factors to be evaluated in determining "whether a reasonable person in the defendant's position would

3

have believed he was in police custody and constrained to a degree associated with formal arrest." *Id.* (*quoting Stamsburg v. California*, 511 U.S. 318, 322 (1994)). Only one of those relies on a defendant's subjective view as to the focus of the investigation as he might perceive it to be. The only remaining factors which might favor the defendant's position in this case is that he was questioned in unfamiliar surroundings, that a police officer initiated the conversation, and that another officer was present, although it is unclear if he had arrived before questioning. The remaining factors support the finding adopted by this court, which are consistent with the holding in *Bruder* and our similar case of *State v. Lewry*, 500 A.2d 64, 65 (Me. 1988), namely that this defendant was subjected to a few brief questions after an ordinary traffic stop involving no physical restraint and no other coercive activities. All that being so, this court must conclude that the State has met its burden of persuasion that the two-question interrogation of the defendant was noncustodial so that *Miranda* warnings were unnecessary. The court also finds that the responses to the questions have been established as voluntary beyond a reasonable doubt.

For all these reasons, the entry will be:

Motion to Suppress is DENIED.

So ordered.

Dated: October 5, 2000

John R. Atwood
Justice, Superior Court

4