STATE OF MAINE

KNOX, ss.

JAN 07 2005

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-04-433

STATE OF MAINE

v.

DECISION AND ORDER

SAMUEL K. CONKLING,

    Defendant

This matter is before the court on the defendant's motion to suppress statements he made to Camden Police Officer John Tooley. In the motion, he alleges that the statements were not voluntarily made and that they were given in a custodial situation without benefit and waiver of *Miranda* warnings. At the hearing on the motion, the defendant abandoned the first ground of his motion and the evidence showed that no *Miranda* warning was ever given. Accordingly, the issue to be resolved is whether or not the defendant was subjected to custodial interrogation. If he was, the motion is to be granted; if not, the motion is to be denied.

In order to resolve this question, the court must first make findings of fact which are recited here as follows:

On June 5, 2004, Officer John Tooley of the Camden Police Department was running radar equipment on Washington Street in that town. While doing so, the radar machine alerted him of a vehicle approaching at 74 m.p.h. Tooley looked in the rearview mirror and heard the screeching of brakes before a large new vehicle passed him and then stopped to the right side of the road. Tooley pulled up behind the vehicle and activated his blue lights.

He found three people inside the car, two of whom he recognized: the defendant, who was in the driver's position, and a passenger, Ed Sweet. Tooley had

known the defendant, Samuel Conkling, in the past but not in the context of his law enforcement responsibilities.

Tooley asked the defendant how fast he had been driving and the latter responded that he was not sure. The officer then asked Conkling to step out of the vehicle and he complied. Tooley next showed him the skid marks and again asked him about his speed, but received the same answer. He continued the inquiry, asking Conkling how fast he would have to be going to leave skid marks like the ones indicated. Each time he was asked, the defendant said he did not know how fast he was driving.

Tooley then left the defendant for a few minutes to talk with the passengers and shortly thereafter returned to Conkling who was still outside the two vehicles. Tooley invited Conkling to have a seat in his cruiser and the latter accepted the invitation, although he testified that he felt he had no choice in the matter.

According to Tooley, the purpose of having Conkling sit in his vehicle was to prepare the paperwork, presumably the summons, and because he knew the defendant. When in the police vehicle, Tooley told the defendant he would be charging him with criminal speeding and driving to endanger.

During this conversation and before the two got into the police car, the defendant appeared to Tooley to be nervous and upset. Once inside the car, and after Tooley told him what the charges were, the defendant pleaded with the officer not to issue him a summons, that he was driving his employer's car, that he might lose his job, and that one of his friends told him to "punch it." These remarks were not made in response to questioning by Tooley. Conkling also asked Tooley a number of questions about the radar equipment and how it was calibrated. He also asked why the officer had to issue him a summons.

During this time in the police car, the officer asked the defendant no questions about his speeding, and was not attempting to get the defendant to admit to speeding. He also never told him he was under arrest or that he could leave, and the latter never asked if he were under arrest or could leave. The defendant credibly testified at the hearing, though, that he did not feel he was free to go.

The entire time the two men were together in the vehicle was approximately 35 to 45 minutes and the bulk of their conversation concerned questions asked by the defendant and responses given by the officer. Tooley's tone of voice was calm and there was no yelling while he conversed with Conkling.

Ultimately, Tooley issued the defendant two summonses, the latter signed them and Tooley told him" he was free to go" or "was all set." Conkling then exited the police car, rejoined his companions and left.

Before the defendant's departure, another police officer arrived in a second cruiser, apparently for the purpose of measuring the skid marks.

"A defendant is 'in custody' if subject to either: (a) a formal arrest; or (b) a 'restraint on freedom of movement [to] the degree associated with a formal arrest.'" *State v. Michaud*, 1998 ME 251, ¶ 4, 724 A.2d 1222, 1226 (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)). In order to determine if a person has been restrained to the degree associated with a formal arrest, the court "must ascertain 'whether a reasonable person in the defendant's position would have believed he was in police custody and constrained to a degree associated with formal arrest.'" *Id.* To answer this question, the court is to consider objective factors, 10 of which are outlined in *State v. Michaud, id.*

Applying those factors to the facts in this case, the court finds that the State has established by a preponderance of evidence that the conversation before and after the defendant entered Officer Tooley's police cruiser was noncustodial.

Tooley's questioning of the defendant while the two were outside the parked cars can fairly be characterized as questioning after an ordinary traffic stop even though Tooley's inquiries were confrontational. *State v. Lewry*, 550 A.2d 64, 65 (Me. 1998). *See also State v. Lavoie*, 562 A.2d 146, 148 (Me. 1989). Such a roadside inquiry is generally viewed as noncustodial; indeed at oral argument on the motion, the defendant's attorney conceded that this exchange between his client and Officer Tooley was noncustodial.

With respect to the conversations between the defendant and Officer Tooley inside the police car, a review of the 10 objective factors cited in *Michaud, id.*, as applied in this case, would yield the following conclusions:

The exchanges between the defendant and Tooley took place in a police car on a public way in close proximity to the defendant's car where his friends waited. Nevertheless, the immediate place where the conversations occurred must be considered to be police-dominated as opposed to a neutral setting. Moreover, it was Officer Tooley who initiated the contact with the defendant and invited him into the car. Further, Tooley had probable cause to arrest the defendant and, although the latter never testified that he believed he might be arrested, he did know he was likely to be charged with a motor vehicle offense.

Officer Tooley, however, never communicated any intent or beliefs to the defendant that he would be arrested. Indeed, in the end he summonsed the defendant. Moreover, Conkling had no reason to believe he would be constrained or arrested; his sole concern was to avoid being given a ticket. It is true, however, that the defendant was nervous and upset after he was stopped but Officer Tooley did not respond to this emotional condition in a way that would encourage the defendant to believe that he was being detained. In the court's opinion, the defendant's emotional state was most

likely due to his concern over being caught speeding in his employer's new car rather than any concern he might have had about the state of his freedom.

The focus of the investigation was plainly on the defendant's speeding.

The defendant was questioned in a police car along side an active thoroughfare[1] in broad daylight with friends nearby in a town in which he resided. These circumstances, in the court's view, neutralize the circumstance that the conversation between the defendant and Officer Tooley took place in a police car.

Only one police officer was present during the parties' conversation, although a second officer eventually came to the scene. The latter had no interaction with the defendant.

No physical restraint was placed upon the defendant and their conversation lasted no more than 45 minutes. The "character" of this conversation is also of importance. The two men knew one another in a context apart from the adversarial relationship of police officer and suspect. Also, Officer Tooley was calm, and did not yell or confront the defendant once the two men were inside the police cruiser. Indeed, their conversation was dominated by the defendant who was asking the officer a number of questions about radar enforcement procedures and the need to give him a ticket in an apparent effort to persuade his acquaintance not to charge him with speeding in his boss' car.

With regard to these last findings, the interaction between the defendant and Tooley in the police car cannot, in the court's view, be considered interrogation. "Interrogation encompasses both express questions and words or actions the police should know are likely to elicit an incriminating response." *State v. Cumming,* 634 A.2d

---

[1] The court is familiar with Washington Street, also known as Route 105, and takes judicial notice that it is a well-traveled road which connects Camden to Hope and western Knox County.

953, 956 (Me. 1993). As noted, supra, the court finds that while Tooley and the defendant were together in the police car, the former asked no questions which might elicit an incriminating answer; instead the conversation between the two men was dominated by the defendant's efforts to question the officer's procedures and to persuade him not to issue a ticket. Because this interaction between these men is not found to be an interrogation, the court must also conclude that no *Miranda* warnings were necessary in order to make this conversation between these men admissible as evidence.

So, in the end, the court finds that the exchanges between the defendant and Officer Tooley, even though they occurred in a police car, were not custodial because the defendant was neither under arrest nor subject to restraint on his freedom of movement which might be associated with arrest as such is to be analyzed pursuant to *State v. Michaud, id.* Thus, in assembling the facts in this case as they may relate to the 10 objective factors cited in *Michaud*, the court concludes that, taken together, they would not support a finding that the defendant was subjected to custodial questioning. This would be so even if the officer, contrary to the findings cited herein, asked the defendant several questions about the speeding allegation.

Additionally, as discussed herein, the interaction between the officer and the defendant cannot be considered interrogation as their conversation was dominated by the defendant's efforts to avoid a traffic ticket while the officer asked him no questions inside the police car about the speeding incident. Accordingly, the court must conclude that there was no custodial interrogation in this case and, therefore, no need for *Miranda* warnings. As such, the motion to suppress cannot succeed.

Based on the forgoing, the clerk is directed to make the following entry:

Motion to Suppress is DENIED.

So ordered.

Dated: January 5, 2005

John R. Atwood
Justice, Superior Court

State's Atty:                    Defendant's Atty.

Carrie Carney, Esq.          Robert Levine, Esq.
Asst. District Attorney      PO Box 248
Knox County Courthouse       Rockland, ME 04841
62 Union Street
Rockland, ME 04841