STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
DOCKET NO CR-09-130

STATE OF MAINE,

v.

ORDER

STEPHANIE HASENBANK A/K/A
STEPHANIE WAKEFIELD,

FILED & ENTERED
SUPERIOR COURT

OCT 1 6 2009

PENOBSCOT COUNTY

Hearing was held on the defendant's motion to suppress statements on June 16, 2008. The State was represented by counsel, Alice Clifford, Esq., while the defendant was present and represented by counsel, Aaron Frey, Esq.

Trooper Michael Johnston began an investigation into an allegation that the defendant had stolen a computer. He had received information that she had been staying at the Hope House in Bangor, but was no longer there. He also was aware that she was required to register as a sex offender and suspected that she was in violation of the requirements of that law for not having notified the registry of a change in residence. He had confirmed this by speaking with a family member who said she was living with a friend in Winterport and by speaking with an employee at the registry. He also spoke with a Bangor police officer and concluded that it was likely that she was no longer at the registry address. Tpr. Johnston eventually learned of a telephone number where he could contact her, called the number, and spoke with defendant on the phone. During the call she told him that she was staying with a friend named Rick. Tpr. Johnston told her he wanted to discuss the missing laptop with her and she agreed to meet him at an Irving Mainway store.

Soon thereafter, Tpr. Johnston met defendant at the store. "Rick" had transported her there and he remained in his vehicle throughout her interaction with the trooper. Tpr. Johnston, who was in uniform and driving a marked cruiser, addressed her through an open window, and asked if she would be willing to speak with him. He asked her to get into the cruiser and she complied and took a seat in the front passenger's seat. He made no comment concerning whether she was under arrest or free to leave. The cruiser remained running, the door on the passenger's side was not locked, but the passenger's window was closed and locked. Tpr. Johnston initiated the conversation by discussing the theft complaint and transitioned into a discussion of where the defendant was living and where her clothing and possessions were located. The defendant indicated she was no longer staying at the Hope House but was staying in Winterport with a friend and had moved some of her possessions to that location. Confident that the defendant was not living at her registry address, Tpr. Johnston had her get out of the cruiser, arrested her, and then placed her back in the cruiser. She indicated at the suppression hearing that she thought she had been locked into the cruiser prior to her arrest even though the court finds that she wasn't, and did not feel free to leave.

During these events, the audio-video apparatus in the cruiser was on, but not functioning properly. Although the video was successfully recorded, there was no recorded audio until the Tpr. Johnston arrested defendant, placed her in the cruiser and began to transport her to the jail. Soon after the audio recorder started to function, Tpr. Johnston read the *Miranda* warning to the defendant and she indicated she understood her rights and would continue to speak with the officer. The court has reviewed the recording and has observed that the defendant was in the cruiser for approximately 20 minutes before being arrested and then continued talking with the officer for several

minutes while the officer was driving before he gave her the warning. At this time they were still moving and she continued to respond to his questions. In the ensuing questioning, Tpr. Johnston obviously doubted her comments about how long she had been with Rick and how complete her transition had been and confronted her about her prior statements in this regard.

A person who is in custody must be advised of the rights referred to in *Miranda v. Arizona* in order for statements made during interrogation to be admissible at trial. *State v. Bridges*, 2003 ME 103, ¶23. Since Tpr. Johnston obviously engaged in interrogation, the only suppression issue is whether the defendant was in custody. A person not subject to formal arrest may be in custody if a reasonable person in the situation of the defendant would have felt that she was not at liberty to end the interrogation and leave or if there were a restraint on freedom of movement to the degree associated with formal arrest. *State v. Hollaway*, 2000 ME 172, ¶14. This test is objective and case law indicates that the court may consider the following factors: the locale where the defendant made the statements, the party who initiated the contact, whether there was probable cause to arrest, subjective views, beliefs, or intent that the police manifested to the defendant relevant to whether a reasonable defendant would feel free to leave as well as the subjective beliefs of the defendant on the same topic; the focus of the investigation, whether the defendant was in familiar surroundings, the number of officers present, the degree of physical restraint placed on the suspect, and the duration and character of the interrogation. *State v. Michaud, 1998 ME 251, ¶4.*

In his case, the defendant sat in Tpr. Johnston's cruiser and answered his questions that were relevant to the issue of whether she had changed residence without notifying the registry, without benefit of *Miranda*. After a period of time the officer arrested her for violating sex offender registration laws, placed her in handcuffs and

returned her to the front seat of his cruiser. At the suppression hearing, the trooper testified that he spoke with the defendant, arrested her, read the *Miranda* warning, and continued to interrogate her. According to testimony at the suppression hearing, there were two relevant periods described with regard to the custody issue, before formal arrest (without *Miranda*), and after formal arrest (with *Miranda*). In fact, a review of the video recording reveals that there were three distinct relevant periods: before formal arrest (without *Miranda*), after formal arrest (without *Miranda*), and after formal arrest and after *Miranda*. Although an obvious issue exists with regard to whether the defendant was in custody before her formal arrest, she was obviously in custody after her formal arrest and any statements made from that point until the officer read her the warning must be suppressed. The problem in this case is that there was no evidence presented of what she said prior to formal arrest as opposed to what she said after formal arrest but before *Miranda* because the testimony at the suppression hearing in essence blended both periods into one. Because of this the court cannot rule that all statements made before the *Miranda* warning are admissible because those statements made prior to formal arrest may be admissible but the statements made after formal arrest but before the warning are certainly not admissible. Because the state did not submit evidence of what was said during each of the periods, the court cannot conclude that any of pre *Miranda* statements are admissible, i.e., it is quite possible that all incriminating pre *Miranda* statements were made after formal arrest and inadmissible.

Next, the Court turns to the issue of the admissibility of the statements made after Tpr. Johnston read the *Miranda* warning. The first issue is whether the statements were voluntary and there is no evidence supporting an argument that they were not voluntary. Second, how does the fact that there may have been an earlier *Miranda*

violation affect the defendant's apparent waiver after having been given the appropriate warning, the so-called "cat out of the bag" issue?

In *Oregon v. Elstad*, 470 U.S. 298, 84 L.Ed.2d 222, 105 S. Ct. 1285 (1985), it was held that a second confession made after the recitation of the *Miranda* warning can be admissible even though it followed an earlier confession, made without benefit of *Miranda*, that was not admissible because the defendant was in custody during the period in which both confessions were made. In doing so the court rejected the "cat out of the bag " effect that the first confession would have on the post *Miranda* waiver. Even though one would expect that a person who had already confessed would not cling to a post-warning right not to confess, and that the initial illegality would taint the voluntariness of the subsequent waiver, the Court held that a simple failure to administer the warnings unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise free will, would not necessarily invalidate a subsequent waiver of rights. This concept was later refined in *Missouri v. Seibert*, 542 U.S. 600, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004), in which the court suppressed both confessions primarily because the police employed a question first, warn later strategy in which the interviewer obtained a tainted confession with the belief that the taint would be removed by then giving a *Miranda* warning and having the suspect repeat the confession. In distinguishing *Elstad, Seibert* announced several factors that were important to the analysis, including the completeness and the detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the interviews, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as a continuation of the first. *Id.,* at 615.

This court concludes that the facts of this case are more like *Elstad* than *Seibert*. Although this questioning was conducted in one setting by the same officer and was continuous, there is no indication that Tpr. Johnston was using a question first tactic. Even assuming that the defendant was in custody for *Miranda* analysis purposes prior to her formal arrest, it is likely that the officer simply didn't feel Miranda was necessary until after the formal arrest. Most important, however is the fact, clear from the audio portion of the recording, that the trooper was unhappy with what the defendant had told him prior to his recitation of the warning. It is quite apparent that he doubted her veracity in describing where she had recently been living and after giving the warnings he confronted her with conflicting information he had obtained form others and grew more aggressive in his questioning. In this regard, he was not trying to get the defendant to repeat a prior illegal confession, as in *Seibert*, but was attempting to cause her to agree that in fact she had, in essence, moved. Based on the Trooper's testimony at trial and a review of his questioning after giving the *Miranda* warning, the Court concludes that there were important differences in completeness and detail between the two interrogations and that there was substantial content that did not overlap. Most compelling, however, is that this is in reality not a true "cat out of the bag" situation because defendant was insisting on the veracity of her somewhat exculpatory statements when the trooper recited the warnings and would have had little reason to believe that it would then be futile to resist the continued questioning because she had already confessed. After the warning, she had the opportunity to reflect on whether she wanted to continue with questioning and resist the officer's insistence that she wasn't telling the entire truth, or whether she wanted to stop. She chose to continue and this court cannot conclude that the decision was the product of an invalid waiver.

The entry is: Motion granted in part and denied in part. All statements made at the Irving Mainway and in the cruiser prior to the recitation of the *Miranda* warning are suppressed. All statements made thereafter are admissible.

Dated: October 16, 2009

WILLIAM ANDERSON
JUSTICE, SUPERIOR COURT