**STATE OF MAINE**
**CUMBERLAND,** ss

0 0 7 1 6 2

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

STATE OF MAINE,

v.

Jessica Babb

2013 OCT 17 AM 9 05

Defendant

**UNIFIED COURT**
CUMCD-CR-13-3761
WSB - CUM - 10/17/203

**DECISION**

## FINDINGS

1. The occupant of the Fisher residence in Falmouth reported stolen jewelry and prescription medication to the Falmouth Police Department.

2. Defendant Jessica Babb was a suspect in the investigation because of her employment at the Fisher residence as a housecleaner and because Ms. Babb had a recent conviction for a similar crime.

3. Detective Wayne Geyer called Ms. Babb and asked if she would come into the Falmouth Police Department.

4. Ms. Babb drove herself to the Falmouth Police Department where Patrolman Austin first questioned her concerning the missing jewelry and medication. Ms. Babb denied having taken the jewelry or medication from the home.

5. Detective Geyer joined the interview. Ms. Babb again denied having committed the crime and said she would admit it if she had. Detective Geyer offered Ms. Babb the opportunity to take a polygraph test in order to clear up any uncertainly about whether she took the medication and jewelry. Ms. Babb agreed to take the Polygraph test.

1

6. Detective Geyer called Detective Peter Wentworth at the Biddeford Police Department and asked him to conduct the polygraph test. Detective Wentworth agreed.

7. Ms. Babb arrived at the Biddeford Police Department on the appointed date for the polygraph test. Detective Wentworth did not perform the test at that time because Ms. Babb was pregnant. It was the policy of Detective Wentworth not to perform polygraph tests on pregnant women without a doctor's note.

8. Ms. Babb returned to the Biddeford Police Department on November 12, 2012 for her rescheduled polygraph test. Because Ms. Babb was no longer pregnant, Detective Wentworth proceeded with the test.

9. Detective Wentworth explained, prior to performing the test, that Ms. Babb was free to leave at any time. Detective Wentworth told Ms. Babb that she would not be arrested at that time, regardless of what she said during the polygraph test. Instead Detective Wentworth told her he would convey the information to the Falmouth Police and the Falmouth Police would take whatever action they deemed necessary.

10. Detective Wentworth read Ms. Babb Miranda warnings. He explained to her that because she was not in custody, Miranda warnings were not technically required. Nevertheless, he said, certified polygraph examiners insisted on the warning as part of their protocol.

11. Detective Wentworth informed Ms. Babb that it would be difficult for him to secure a court appointed attorney to represent her at that time because she was not under arrest. He told her that if she had an attorney, she was free to

call her attorney. She did not ask for an attorney or claim that she had an attorney.

12. After the test, Detective Wentworth informed Ms. Babb that the results indicated deception. Ms. Babb confessed to taking the prescription medication from the Fisher household but not the jewelry.

13. At the suggestion of Detective Wentworth, Ms. Babb wrote a written confession on a "voluntary statement" sheet provided by Detective Wentworth. The "voluntary statement" sheet had Miranda warnings printed at the top of the page.

14. The interaction between Detective Wentworth and Ms. Babb was congenial from beginning to end. Detective Wentworth made no promises or threats.

15. Later that day, Ms. Babb sent an unsolicited email to Detective Wentworth which stated: "I wanted to personally apologize for this morning and instead of going threw the process I should have been honest from the start and I am sorry for wasting your time but I appreciate your advise and I know I did the right thing. I know I cant take back what I have done but I also know I cant continue on this path and thank you for opening my eyes to the good even in the worst of situations I will be forever grateful of your advise."


DICUSSION

Ms. Babb has moved the court to suppress her confession and all statements made during her interviews with the Falmouth and Biddeford Police. Ms. Babb argues that the evidence was illegally obtained because she was not properly Mirandized and was deprived of her sixth amendment right to an attorney.

3

A suspect must be given Miranda warnings, including her right to an attorney, prior to custodial interrogations. State v. Michaud, 1998 ME 251, ¶ 3,724 A.2d 1222. A suspect is in custody when "a reasonable person in the defendant's position would have believed he was in police custody and constrained to a degree associated with formal arrest." Id. at ¶ 4. At all times in question, both at the Falmouth Police Department and at the Biddeford Police Department, Ms. Babb was free to leave and knew she was free to leave. For both the interview at the Falmouth Police Department and the polygraph test at the Biddeford Police Department, Ms. Babb drove herself and voluntarily submitted to questioning. There were never more than two officers present and the officers wore plain clothes. At no time during the interviews was Ms. Babb under arrest. Nor would a reasonable person in Ms. Babb's position believe she was in police custody and constrained to a degree associated with formal arrest. Because Ms. Babb was not in custody, she was not entitled to Miranda warnings.

Ms. Babb argues that because she had a prior conviction for a similar crime with bail conditions requiring her to submit to random drug testing she had a subjective believe that she was required to submit to questioning and there fore believed that she was constrained to the degree associated with formal arrest. Ms. Babb's bail conditions do not refer to police positioning or polygraph tests. Nor did they refer to totally separate cases. Furthermore, Ms. Babb was advised of her right to leave the polygraph test at anytime.

Similarly, an individual has a right to an attorney after the initiation of formal charges, McNeil v. Wisconsin, 501 U.S. 171, 175 (1991). The individual must invoke her right to an attorney for each individual prosecution. Id. There were no formal charges against Ms. Babb in this case at the time she submitted to

4

questioning. For that reason, Ms. Babb, was not entitled to the Sixth Amendment right to an attorney. Furthermore, Ms. Babb, did receive Miranda warnings and was told that she could call her attorney if she had one. Ms. Babb chose not to.

Ms. Babb also argues that she was entitled to the Sixth Amendment right to an attorney because she had been formally charged with a prior similar crime for which she had an attorney. Ms. Babb contends that she invoked her right to an attorney when she asked to have an attorney in her prior case. She further contends that she should not be required to invoke her right to an attorney again because the crime in question is similar to her previous charge. The Sixth Amendment right to counsel is "offence specific". State v. Rouse, CR-03-727, 2004 WL 1433627 (Me. Super. Apr. 1, 2004). "[T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities." Maine v. Moulton, 474 U.S. 159, 180 (1985). Ms. Babb was not entitled to the Sixth Amendment right to an attorney during either non-custodial interview.

## CONCLUSION

The clerk, by reference, will make the following entry on the docket:

Defendant's motion to suppress is DENIED in all respects.

Date: /0 - 17 - 13                                _4/S. Brodrick_
                                                 William Brodrick
                                                 Justice, Superior Court, Active Retired

5