STATE OF MAINE                  UNIFIED CRIMINAL DOCKET
CUMBERLAND, ss.               DOCKET NO. CUMCD-CR-2021-04648

STATE OF MAINE           )
                              )
                              )
v.                          )         **ORDER DENYING DEFENDANT'S**
                              )            **MOTIONS TO SUPPRESS**
                              )
BRANDON LIBBY,         )
                              )
        Defendant.       )

Before the Court are Defendant Brandon Libby's two pending Motions to Suppress. In the first motion, Mr. Libby seeks to suppress evidence obtained during the warrantless search of his home at 35 Dow Road, Standish, Maine. In the second motion, Mr. Libby seeks to suppress statements he made to law enforcement officers in the ambulance and at the hospital on June 16, 2021, before he received *Miranda* warnings.

At hearing on February 2, 2024, the Court heard the testimony of Sergeant Brian Smith, Deputy Richard Bradway, and Lieutenant David A. Hall[1] of the Cumberland County Sheriff's Office, as well as Maine State Police Detective Lauren Edstrom and Sergeant Ethel Ross. The Court makes the following findings of fact and conclusions of law.

## I.    Findings of Fact

On June 16, 2021, at 10:17 a.m., Lieutenant David A. Hall heard "radio traffic" about an incident at 35 Dow Road, Standish. He responded to the address. On the way to 35 Dow Road, he received a call from Deputy John Cross, who told Lieutenant Hall that, while responding to an address in Hollis, he had learned that a woman may have been shot in the stomach at 35 Dow Road.

---

[1] Lieutenant Hall retired in April 2022.

When Lieutenant Hall arrived at 35 Dow Road, other officers were already on scene. Deputy Bradway was the first officer to respond to 35 Dow Road, after receiving a call about a possible dead body. He walked around the house and saw no signs of struggle outside. He characterized the purpose of the search as locating a body or injured victim, not to locate evidence.

Lieutenant Hall gave the order to breach the door to search for the potential victim. Lieutenant Hall entered the home and remained in the kitchen while other officers searched the home.

Body-worn camera footage shows officers at 35 Dow Road repeatedly announcing "Sheriff's office" before breaching the door and while searching the first and second floors, basement, and attic space. Officers searched the home with their weapons drawn. A few minutes after officers breached the door, one of the officers can be heard yelling "10-48," indicating that a body had been located. Officers continued to search the remaining areas of the home for other victims.

Sergeant Smith informed Lieutenant Hall that he had located a body. Lieutenant Hall checked on the body and then called to report to his superior. Officers left the home after searching remaining rooms for other victims.

Detective Edstrom testified that on June 16, 2021, she received a call to respond to Waterboro regarding a man who may have been involved in a death in Standish. When Detective Edstrom arrived at the Waterboro residence, Maine State Police were surrounding the house, where Mr. Libby had barricaded himself inside.

When Mr. Libby came outside, he was bitten by the duty K-9 and placed in handcuffs. Due to the bite wounds, he was loaded into an ambulance. Detective Edstrom joined him in the ambulance.

Detective Edstrom testified that she did not give Mr. Libby *Miranda* warnings in the ambulance because she did not intend to question him. Detective Edstrom's recorder was, however, recording during the ambulance ride and at the hospital. At one point while in the hospital, Mr. Libby asked Detective Edstrom if she had questions for him. Detective Edstrom replied that she would like to talk with him about what happened, but not until he had seen the doctor. She told him she wanted to read him *Miranda* warnings before talking with him.

In the ambulance and at the hospital, Mr. Libby volunteered information about the events of that day and the night before, as well as his relationship with the victim. Detective Edstrom and Maine State Police Troopers Miles Carpenter and Patrick Hall asked a few questions about Mr. Libby's injuries and use of prescribed medications and other substances, as well as conversational questions about Mr. Libby's background.

When Detective Edstrom's partner, Sergeant Ross, arrived at the hospital, she started to give Mr. Libby *Miranda* warnings, but stopped when Detective Edstrom told her that Mr. Libby had not yet been seen by the doctor. Sergeant Ross read Mr. Libby his *Miranda* rights in full after he had been seen by the doctor. After hearing the warnings, Mr. Libby confirmed that he wished to speak with the detectives. When he indicated that he needed a break, Detective Edstrom arranged for a ride for Mr. Libby.

## II.   Conclusions of Law

Under Maine's Constitution and the United States Constitution, Mr. Libby challenges the warrantless search of 35 Dow Road and his unwarned statements in the ambulance and at the hospital.

### A.   Warrantless Search

The Fourth Amendment to the United States Constitution and article 1, section 5 of the Maine Constitution prohibits unreasonable searches and seizures. U.S. Const.

amend. IV; Me. Const. art. 1, § 5. In general, the reasonableness of a search is determined by weighing the degree to which it intrudes on an individual's privacy against the legitimate government interests in the search. *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). The reasonableness of a search "is generally assured through an officer's procurement of a warrant issued upon the demonstration of probable cause, or through the individual's consent to the search." *State v. Cormier*, 2007 ME 112, ¶ 14, 928 A.2d 753. "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *State v. Akers*, 2021 ME 43, ¶ 26, 259 A.3d 127 (quoting *Riley v. California*, 573 U.S. 373, 382 (2014)).

The State argues that the warrantless search of 35 Dow Road was permissible under the emergency aid doctrine. The emergency aid doctrine provides that "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). "Th[e] emergency aid exception does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises. It requires only an objectively reasonable basis for believing that a person within the house is in need of immediate aid." *Akers*, 2021 ME 43, ¶ 36, 259 A.3d 127 (quoting *Michigan v. Fisher*, 558 U.S. 45, 47 (2009)).

Officers responded to 35 Dow Road after a report that a woman had been shot in the stomach at that address, and that the victim was possibly deceased. Defense counsel argues that exigent circumstances do not exist to investigate a report of a dead body. Indeed, if officers had received an unequivocal report of a dead body or a shooting that had occurred long ago, there may not be a reasonable basis for believing that the victim needed assistance. At the time they breached the house, however, officers were acting on information that a woman had been shot relatively recently and *may* be deceased. It was

reasonable to believe that she needed immediate aid. The State has met its burden of proving the existence of an exception to the warrant requirement.

### B. Pre-*Miranda* Statements

"A person who is in custody and subject to interrogation must be advised of the rights referred to in *Miranda v. Arizona* in order for statements made during the interrogation to be admissible against [him] as part of the State's direct case at trial." *State v. Bridges*, 2003 ME 103, ¶ 23, 829 A.2d 247; *see Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). A person is "in custody" if he is subjected to a formal arrest or "a restraint on freedom of movement to the degree associated with a formal arrest." *State v. Bryant*, 2014 ME 94, ¶ 10, 97 A.3d 595 (quoting *State v. Michaud*, 1998 ME 251, ¶ 4, 724 A.2d 1222). A defendant is restrained to the degree associated with a formal arrest when "a reasonable person in the defendant's position would have believed he was in police custody." *Michaud*, 1998 ME 251, ¶ 4, 724 A.2d 1222.

There can be no dispute that Mr. Libby was in custody after he was subdued by the K-9, handcuffed, and placed into an ambulance, accompanied by law enforcement officers. The State argues that although Mr. Libby was in custody in the ambulance and at the hospital, he was not subject to interrogation before receiving *Miranda* warnings.

A person is subject to interrogation if he is subject to "questioning initiated by law enforcement officers after [having] been taken into custody or otherwise deprived of his freedom of action in any significant way." *Michaud*, 1998 ME 251, ¶ 3, 724 A.2d 1222 (quoting *Thompson v. Keohane*, 516 U.S. 99, 107 (1995)). Interrogation encompasses "express questioning or its functional equivalent. . . . [including] any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *see State v. Fleming*, 2020 ME

120, ¶ 26, 239 A.3d 648. "[B]rief, neutral questions that are not part of an effort to elicit a confession or admission do not constitute interrogation." *Fleming*, 2020 ME 120, ¶ 26, 239 A.3d 648 (quoting *State v. Reese*, 2010 ME 30, ¶ 8, 991 A.2d 806).

The few questions law enforcement officers asked before administering *Miranda* warnings were either conversational questions about Mr. Libby's background or questions regarding Mr. Libby's medical condition. These questions did not and could not reasonably have been expected to elicit an incriminating response. The unwarned statements Mr. Libby offered about the events of that day and the night before were entirely volunteered, without prompting by law enforcement.

Mr. Libby argues that the delay in administering *Miranda* warnings was an impermissible tactic intended to induce Mr. Libby to reveal incriminating information. The Law Court, interpreting *Missouri v. Seibert*, 542 U.S. 600, 617 (2004), has held that when law enforcement has elicited a pre-warning confession before administering *Miranda* warnings and eliciting a post-warning confession, "the State bears the burden of demonstrating by a preponderance of the evidence that the two-step procedure was not deliberately employed to undermine the efficacy of the *Miranda* warnings." *State v. Nightingale*, 2012 ME 132, ¶ 29, 58 A.3d 1057.

Here, the State demonstrated that Detective Edstrom delayed giving *Miranda* warnings because she did not think it was appropriate to question him or obtain a *Miranda* waiver before Mr. Libby had been treated for his injuries. There was no deliberate attempt to elicit a pre-warning confession or undermine the efficacy of the *Miranda* warnings eventually given by Detective Ross. *See id.* ¶ 30. There are no grounds for suppressing Mr. Libby's volunteered statements.

## III. Conclusion

For the foregoing reasons, the State has met its burden with regards to both of Mr.

Libby's motions.

The Court orders as follows:

1.      Defendant Brandon Libby's Motion to Suppress evidence is DENIED; and

2.      Defendant Brandon Libby's Motion to Suppress statements is DENIED.

The clerk is instructed to incorporate this Order by reference on the docket pursuant to M.R.U. Crim. P. 53(a).

Dated: _February 14, 2024_

_____
MaryGay Kennedy, Justice
Maine Superior Court